**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**FRANK J. GILBERT,**                                CV 04-1070-BR

                  **Plaintiff,**                      OPINION AND ORDER

**v.**

**JO ANNE B. BARNHART,**
**Commissioner of Social**
**Security,**

                  **Defendant.**


**SHARON MAYNARD**
SWANSON, THOMAS & COON
The Thomas Mann Building
820 S.W. Second Ave, Suite 200
Portland, OR 97204
(503) 228-5222

           Attorneys for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

**VIKASH CHHAGAN**
Acting Regional Chief Counsel
**DAVID R. JOHNSON**
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2545

Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Frank Gilbert brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the Commissioner's final decision.

## BACKGROUND

Gilbert was born October 4, 1953.  He went to school through the eleventh grade and worked as a shipyard machinist.  He sustained a work injury on January 18, 2000, when he jammed his left leg while hopping a short distance from a platform.  This caused pain in his low back, buttocks, and right leg and numbness and tingling down his left leg.  Gilbert alleges he became disabled on January 28, 2000, due to a "sciatic nerve problem" that left him "unable to lift, walk climb, squat."

Tr. 69.[1]

Gilbert testified he experiences depression, anxiety, anger, and violent impulses.  He has been receiving psychiatric treatment since the early 1990s.  Tr. 317.

The ALJ held a hearing in April 2002 and issued a written decision on July 8, 2002.  The Appeals Council remanded that decision to the ALJ with instructions to "address the medical opinions expressed by Dr. Milan Sosnovec, M.D., (Exhibit 10F) as to the claimant's ability to perform work related functions [and] indicate the weight given to such opinion evidence."  Tr. 257.

After remand and a second hearing in July 2003, the ALJ issued a written decision on March 26, 2004.  Tr. 9-22.  The decision after remand is the final decision of the Commissioner on appeal before this Court.

## DISABILITY ANALYSIS

The initial burden of proof rests on the claimant to establish disability.  *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir. 1995).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987). *See also* 20 C.F.R. § 404.1520.

In performing the sequential evaluation, the ALJ must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.1545(a). *See also* Social Security Ruling (SSR) 96-8p.

If the adjudication reaches Step Five, the Commissioner must determine whether the claimant's RFC permits him to perform any work that exists in the national economy. *Yuckert,* 482 U.S. at 141-42. *See also* 20 C.F.R. § 404.1520(e),(f). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. § 404.1566.

Gilbert challenges the ALJ's evaluation of the evidence and the accuracy of his RFC assessment. Gilbert contends the ALJ erroneously concluded he is able to work because the ALJ's RFC assessment did not reflect all of Gilbert's limitations.

### The ALJ's Findings

The ALJ found Gilbert's ability to perform basic work-related activities is limited by a back disorder, depression, and a personality disorder.

He assessed Gilbert with the following RFC:

> I find the claimant retains the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently. He can stand and walk 20 minutes at a time and can sit 20 minutes at a time. Cumulatively, he has unlimited capacity for sitting, standing and walking in an 8-hour workday with normal breaks. He can do no pushing or pulling with the lower extremities. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He is precluded from bending and climbing ladders, ropes or scaffolds. He is limited to simple, routine, repetitive work with only occasional interaction with co-workers, supervisors and the public.

Tr. 20.

The ALJ found Gilbert remained capable of performing work in the national economy. He identified examples of work that Gilbert could do: electronics assembler and laundry worker. The examples were drawn from the testimony of the impartial vocational expert (VE). Accordingly, the ALJ concluded Gilbert was not disabled and, therefore, not entitled to an award of benefits under Title II of the Social Security Act. Tr. 20.

## STANDARDS OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson,* 359 F.3d at 1193. The Commissioner's decision must be upheld even if the "evidence is susceptible to more than one rational interpretation." *Andrews,* 53 F.3d at 1039-40.

## DISCUSSION

Gilbert contends the ALJ failed to assess accurately his RFC when the ALJ improperly discredited Gilbert's subjective statements and discounted the opinion of his treating

psychiatrist, Milan Sosnovec, M.D. Gilbert contends the ALJ's inaccurate RFC assessment led him to the erroneous conclusion that Gilbert remains capable of performing work in the national economy.

## I. Gilbert's Credibility

At the first hearing, Gilbert described back surgeries in 1987 and 1991 performed by Thomas Rosenbaum, M.D., a neurologist. Gilbert suffered a work injury in January 2000 when he jammed his leg while hopping from a platform. He experienced pain in his right leg and numbness in his left leg. He continued to work for several days, but the pain and numbness were constant and persisted until he stopped working.

At the time of the first hearing, Gilbert continued to experience pain in his right leg, especially when engaging in physical activity. He described it as a momentary shooting pain occurring a couple of times a day, "maybe five to six days" a week. Tr. 310.

Gilbert's right leg pain was worse when he engaged in activities such as riding his lawnmower to cut his three-acre pasture. The vibrations from the lawnmower also aggravated his sciatic nerve. It would take him 3½ hours to cut the pasture, but he was able to do it with pain medication. He would sometimes get off the lawnmower "for a little bit." Tr. 311.

Gilbert testified he mopped, swept, vacuumed, and cleaned the kitchen, but he did so more slowly and with more breaks than in the past.  He also worked outside feeding his horse and working in the barn, but he had to take longer breaks between tasks.  Gilbert testified his activities varied:  "[A]ny day can be different with me."  Tr. 315.

Gilbert could sit for 15-20 minutes, and then he would need to stand or to walk around.  He could not be bent over, however, for more than two or three minutes at a time.

Gilbert said he began to receive psychiatric treatment from Dr. Sosnovec in 1992 or 1993 because of stress, anxiety, and violent impulses.  Gilbert has been on medications for these conditions since he began treatment with Dr. Sosnovec.  At the time of the first hearing, Gilbert felt the medications helped him a great deal.

Gilbert also testified he experienced anxiety and stress and felt uncomfortable around big crowds of people.  Tr. 328.  While working, he had impulses to hurt someone.  "There were times that I would just leave the yard because I couldn't handle it because I thought I would drop something on somebody's head intentionally."  Tr. 320.  He would leave work early approximately two or three times per month due to these feelings.  Gilbert also stated he had trouble with authority figures.

About one year before the hearing, Gilbert grabbed his son and threw him across the room. Tr. 324.

At the second hearing on July 17, 2003, Gilbert told the ALJ there had been no change in his condition. Tr. 356. His pain medication had been increased. He continued to use his riding lawnmower, but he had to lie down after cutting the pasture. The day after cutting the pasture, he would be unable to do any physical activity. Tr. 315, 359.

The ALJ found Gilbert's statements were not entirely credible. The ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding the severity of his symptoms. *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). *See also Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ also must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995).

The ALJ may consider objective medical evidence and the claimant's treatment history as well as the claimant's unexplained failure to seek treatment or to follow a prescribed course of treatment. *Smolen,* 80 F.3d at 1284. The ALJ also may consider the claimant's daily activities, his work record, and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Id.* In

addition, the ALJ may employ ordinary techniques of credibility evaluation such as considering prior inconsistent statements concerning symptoms and statements by the claimant that appear to be less than candid. *Id.* *See also* SSR 96-7p.

The ALJ determined Gilbert's testimony that "90 percent of the time I lay down during the day" was not credible. Tr. 361. The ALJ apparently interpreted Gilbert's statement as an "allegation of debilitating pain requiring him to spend 90% of the day lying down." Tr. 18. The ALJ concluded Gilbert's activities were inconsistent with that allegation. The ALJ's interpretation of Gilbert's statement, however, is not reasonable. Gilbert's statement in context shows he intended to indicate that he must lie down for an unspecified period of time on most days. Gilbert does not suggest in his testimony or in his arguments that he believes he is essentially bedridden 90% of the time.

The ALJ, nonetheless, considered proper factors and articulated additional reasons sufficient to support his credibility conclusion. His credibility determination as to Gilbert's testimony also is supported by substantial evidence in the record as a whole.

The ALJ reviewed Gilbert's treatment history and found it did not support his claim of total disability. Gilbert's treatment history shows he had back surgeries by Dr. Rosenbaum in

1987 and 1991.  He also reported his back was "doing great" from 1991 until his work injury in January 2000.  Tr. 127.

On February 1, 2000, Dr. Rosenbaum performed a neurological examination that resulted in findings that were "almost normal." Tr. 131, 140.  An MRI from February 11, 2000, showed a moderate right disc protrusion at the lumbosacral junction with a swollen right S1 nerve root.  Tr. 131, 190.  The independent medical evaluation performed during the process of the workers' compensation claim filed by Gilbert indicated these right-sided abnormalities of the spine did not correlate with his left-sided leg numbness and tingling.  Tr. 131.

On March 8, 2000, Gilbert's primary-care physician, Susan Lewis, M.D., indicated Gilbert reported improved sciatica, but he also indicated he experienced continuing numbness and tingling in his left leg.  Gilbert continued thereafter to have flares of intermittent sciatic pain with numbness going down his left leg, but Dr. Lewis believed Gilbert was "doing relatively well." Tr. 180, 284.

In June 2000, Dr. Lewis opined Gilbert should be retrained for a less physical occupation:  "I think he will do fine in another less physical job."  Tr. 187.  By August 2000, Dr. Lewis had authorized Gilbert to do sedentary work.  Tr. 185.  The record does not indicate this was a permanent restriction.

Tr. 133-34.  Referring to Gilbert's past work in the shipyards,
Dr. Lewis opined in October 2000 that Gilbert was "simply unable
to do a job that is that physical in nature."  Tr. 182.
Dr. Lewis, however, supported "finding another type of
employment" for Gilbert.  Dr. Lewis's statements are contrary to
Gilbert's assertion of total disability.

On September 1, 2000, Gilbert underwent an independent
medical evaluation by orthopedic surgeons William Parsons, M.D.,
and Anthony Woodward, M.D.  They examined Gilbert, reviewed
diagnostic images and the treatment records of Drs. Rosenbaum and
Lewis, and viewed a few hours of video that showed Gilbert taking
his son to school and his wife to a café for lunch.  Tr. 130-32.

On examination, Gilbert's range of motion varied with
repeated measurements.  He had full strength in all muscle groups
in the lower extremities with "ratchety give-way on the left,"
and his straight leg raises were self-limited by subjective pain.
Tr. 129.  Drs. Woodward and Parsons found the examination
"invalid for rating impairment."  Tr. 133.  In addition, they
concluded Gilbert's neurological examination was inconsistent
with the "almost normal" findings of Dr. Rosenbaum two weeks
after Gilbert's work injury.  Tr. 131.  On the video, Gilbert
walked easily with natural movements, got in and out of his
car, and sat for 25 minutes at the café without exhibiting
outward signs of discomfort.  Drs. Woodward and Parsons found

this inconsistent with Gilbert's pain behavior during the examination.

Drs. Woodward and Parsons diagnosed only mild degenerative changes in the lumbar spine. They did not find any objective evidence to support Gilbert's subjective complaints and did not believe Gilbert had any limitation in his capacity to work as a result of his work injury in January 2000. Tr. 133.

Considering these medical opinions together with Gilbert's report that his back was fine until the work injury, the ALJ reasonably could conclude the medical evidence did not support Gilbert's claims of severely debilitating orthopedic impairments that would preclude all work.

Similarly, Gilbert's psychiatric treatment history did not support total disability. Dr. Sosnovec treated Gilbert for longstanding depression, anxiety, and irritability for years while Gilbert functioned adequately at work in the shipyard. The ALJ, therefore, reasonably could conclude these symptoms do not preclude Gilbert from functioning in a work setting.

After performing a consultative evaluation, Cheryl Brischetto, Ph.D., opined Gilbert's ability to function at work before his last injury suggested his present irritability, depression, and anxiety were an adjustment reaction to losing his livelihood. Tr. 154. Consistent with Dr. Brischetto's opinion, the episodes of explosive temper reported by Gilbert have

occurred away from the work setting.  For example, Gilbert said "a guy flipped me off" while driving in the summer of 2000. Tr. 149.  Gilbert chased the other driver and assaulted him when he came to a stop.  Gilbert also reported choking his wife in a fit of anger in 1995 and striking his son and yelling at him in July 2000.  Tr. 149, 212.  In May 2000, Gilbert said he feared "going postal," but this was months after he stopped working. Tr. 215.  In contrast with these episodes away from the work setting, the record does not reflect similar reports of violent episodes at work.

Gilbert testified he was only able to work by sneaking away several times a month when violent impulses made him fear he would hurt someone.  Although Gilbert saw Dr. Sosnovec approximately every two weeks over a period of years and described his activities, impulses, and feelings in detail, Dr. Sosnovec's treatment notes do not reflect a single instance in which Gilbert left work under the circumstances described in his testimony.

While Gilbert was working, Dr. Sosnovec noted he experienced anxiety, depression, and frustration, but he managed to process these feelings.  He was "frustrated but not expressive of symptoms dangerous to self, others."  Tr. 235.  Gilbert worked out of town for several weeks in 1999, and there was "little break from being around peers," particularly one abusive co-

worker.  Tr. 223.  Gilbert found this stressful, but he did not
report uncontrolled outbursts or an inability to function.
Accordingly, the ALJ reasonably could conclude from Gilbert's
mental health treatment history that his psychological
difficulties do not impose limitations that would preclude all
work.

The ALJ also found Gilbert's daily activities were
inconsistent with his claim of total disability.  Dr. Brischetto
reported Gilbert's daily activities in January 2001 as follows:

> He does go out to the grocery store and run
> errands for the home. . . .  He does cook for
> the family. . . .  He spends the day "poking
> around the house."  He sweeps the barn, and
> brushes the horse. . . .  He helps load some
> wood and does bail hay.  He mentioned that he
> is very slowed in doing these things.  He
> does vacuum and keep the kitchen clean.  He
> apparently has a small tractor to mow his
> lawn. . . .  He does drive a car and drove
> himself to the current appointment from
> Boring, Oregon. . . .  He does go to the
> grocery store.  He apparently pressure washed
> his house at some point in the recent past,
> and it took him five hours to do so. . . .
> He can use the phone.  He showers and dresses
> on a daily basis.  Hard to write sometimes,
> because of diminished strength.

Tr. 150.

These activities are not equivalent to sustained work
because Gilbert asserts he performs them at a reduced pace with
rest breaks that would not be available in competitive
employment.  The ALJ, however, reasonably could conclude in the
context of the medical evidence and the record as a whole that

15 -  OPINION AND ORDER

these activities are more consistent with Gilbert's ability to perform light work than with his assertion of total disability.

The ALJ also found Gilbert expressed interest in other occupations contrary to his allegation that he is completely unable to do any work.  On April 27, 2000, Gilbert reported he was going to "start looking for another line of work as he is nervous about climbing ladders" due to back problems and fear that his left leg would give out.  Tr. 187.

In January 2001, Gilbert related the following to Dr. Brischetto:

> He and his wife have been recently trying to buy a liquor store to get some work for him. He said he could not get a [liquor] license because of his prior history, but his wife tried.  He was feeling "happy," because he thought that this would work out.  However, he stated that eventually their request was denied with reason indicated that they did not have enough retail experience.  He also said they had been looking at other franchises, such as Subway and Papa Aldo's.

Tr. 151.

Gilbert correctly argues these statements do not show he is capable of performing the occupations that he describes. Nonetheless, the ALJ reasonably could conclude Gilbert and his wife would not look for work that they did not believe he could perform.  Gilbert's belief that he could perform these occupations and other work less physical than his past work in

the shipyard is contrary to his simultaneous assertion that he
cannot perform any work.

The evidence summarized here and in the ALJ's written
decision provides substantial evidence to support the ALJ's
conclusion that Gilbert's statements regarding the severity of
his impairments are excessive and not fully credible.  The Court,
therefore, finds the ALJ did not err when he rejected Gilbert's
assertion that his impairments leave him unable to perform any
work.

## II.  **Medical Opinion of Dr. Sosnovec**

Dr. Sosnovec has been Gilbert's treating psychiatrist for at
least ten years.  His diagnoses include major depression,
intermittent explosive disorder, and a learning disability.  On
April 25, 2002, he wrote to Gilbert's attorney in support of
Gilbert's disability claim:

> I have serious concerns about Frank being
> able to handle the stressors of a competitive
> work environment.  He has an extremely low
> frustration tolerance, he is persistently
> irritable and angry, he has a markedly
> diminished ability to tolerate tension and he
> has a marked inability to get along with
> people.  In my experience, it just does not
> take very long for Frank to have a bad
> interaction with someone.  Moreover, he often
> has to fight strong impulses to become
> violent when he becomes frustrated. . . .
> These problems have been chronic during the
> time I've [been] treating him and I believe
> that this potential for violence is high if
> he is put in a situation he can not tolerate.

Tr. 245.

The ALJ found the opinion of Dr. Sosnovec was not entitled
to great weight.  The ALJ agreed Gilbert had mental deficits that
limited him "to simple, routine, repetitive work with only
occasional interaction with co-workers, supervisors and the
public," but the ALJ did not credit Dr. Sosnovec's assertion
that Gilbert had marked limitations that would make it impossible
for him to function under the stress of any competitive
employment.  Tr. 20.

The ALJ can reject a treating or examining physician's
opinion that is inconsistent with the opinions of other treating
or examining physicians if the ALJ makes "findings setting forth
specific, legitimate reasons for doing so that are based on
substantial evidence in the record."  *Thomas v. Barnhart*, 278
F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen,* 881
F.2d 747, 751 (9th Cir. 1989)).

The ALJ considered appropriate factors when he evaluated
Dr. Sosnovec's opinion, and the ALJ's conclusion is supported by
substantial evidence in the record.  He found Gilbert's treatment
history, work history, and activities did not support total
disability.  The ALJ also noted Dr. Sosnovec's treatment records
did not include testing or clinical findings.  His opinion
appeared to be "based solely on the claimant's self-report of
symptoms."  Tr. 19.  An ALJ can properly reject a physician's
disability opinion that is premised on the claimant's own

subjective complaint of disabling symptoms that the ALJ has properly discounted. *Fair v. Bowen,* 885 F.2d 597, 605 (9th Cir. 1989). *See also Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ also noted the treatment notes of Drs. Lewis and Rosenbaum did not reflect that Gilbert had difficulties with anger or episodes of problematic interactions. The ALJ also relied on Gilbert's work history and pointed out that his symptoms were chronic. Dr. Sosnovec stated the symptoms had persisted for at least ten years. Similarly, it appeared to Dr. Brischetto that Gilbert's anger and temper problems had persisted since the 1980s. Despite this longstanding pattern, Gilbert functioned adequately for competitive employment through the date he stopped working in January 2000.

In addition, Gilbert's employment did not end due to an inability to handle the stress of a competitive work environment. He felt physically unable to perform his past work as a machinist and resisted his employer's offer of sedentary work because he felt overqualified. Tr. 185.

The ALJ also pointed out Gilbert's complaints to Dr. Sosnovec did not reflect Gilbert had difficulty handling routine, day-to-day interactions with others. Gilbert voiced frustration with the disability determination process, but he did not report problematic interactions with specific individuals. As noted,

Gilbert's angry outbursts occurred outside of the day-to-day routine of the work setting in a road-rage incident and at home.

The ALJ also found Gilbert engaged in activities that indicated he is capable of interacting appropriately with others. He has demonstrated the ability to shop, to solicit donations for a charity, and to spend several days on a cruise ship without inappropriate interactions with other passengers. Tr. 215, 296. Shortly before he stopped working, Gilbert was able to spend weeks at a time on out-of-town jobs in close proximity with co-workers.

Finally, the ALJ relied on the findings of nonexamining psychological consultants. The psychological consultants reviewed Gilbert's treatment records and found he is quick to anger and has significant limitations in his ability to interact with co-workers and the general public. They concluded, however, that Gilbert remained capable of "brief, routine peer interactions and supervision that is firm but not abusive in style." Tr. 159. The opinions of nonexamining consultants may constitute substantial evidence to discredit the contradictory opinion of a treating physician if those opinions are consistent with other evidence in the record. *Magallanes v. Bowen,* 881 F.2d at 752. The Court finds the record as a whole is consistent with

the consultants' findings, and, therefore, the ALJ did not err when he gave great weight to those findings.

The ALJ's decision also included findings that set forth specific, legitimate reasons for discounting Dr. Sosnovec's opinion. The ALJ's reasons were based on substantial evidence in the record. The Court will not substitute its judgment for the ALJ's rational assessment of the evidence. *Andrews,* 53 F.3d at 1039-40.

Accordingly, the Court finds Gilbert has not presented any basis for the Court to overturn the ALJ's conclusion. *Thomas v. Barnhart,* 278 F.3d at 957. *See also Magallanes v. Bowen,* 881 F.2d at 751.

## III. <u>**Gilbert's Remaining Contentions**</u>

Gilbert contends this case must be remanded for an immediate award of benefits if his complaints and the opinion of Dr. Sosnovec are fully credited. The Court, however, already has concluded the ALJ evaluated this evidence based on proper factors and the ALJ's findings are supported by substantial evidence in the record as a whole.

Accordingly, this Court cannot disturb the ALJ's conclusion that the evidence is entitled to only the weight he gave it. *Andrews,* 53 F.3d at 1039-40.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 24th day of January, 2006.


/s/ Anna J. Brownp


_____
ANNA J. BROWN
United States District Judge


GILBERTCV04-1070.O&O-1-23-06-DG.wpd